FILED
2008 Jan-07  AM 09:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| SYLVANUS OGBURIA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 5:06-CV-2275-VEH** |
| | ) | |
| ALABAMA AGRICULTURAL & | ) | |
| MECHANICAL UNIVERSITY, et | ) | |
| al., | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint (doc. 27). Defendants have briefed the issues (docs. 28, 33, 39), as has the Plaintiff (docs. 30, 36). The court has carefully considered the arguments and authorities of the parties and is of the opinion that the Motion, for the reasons stated, is due to be **GRANTED** in part and **DENIED** in part.

## I.    INTRODUCTION

### A.    The Parties

The plaintiff, Sylvanus Ogburia ("Ogburia", "Plaintiff") is a former tenured professor employed by Alabama Agricultural and Mechanical University ("Alabama

1

A&M")[1].  His employment was terminated by the defendant, Dr. Robert Jennings

("Jennings"), the President of Alabama A&M.  Jennings is sued both individually and

in his official capacity.  The remaining defendants are members of the Board of

Trustees of Alabama A&M and are sued in their official capacities only.  The board

members are collectively referred to herein as the "Board Members".

B.    The Claims

Ogburia's Amended Complaint (doc. 26) has six counts.  Count One seeks

declaratory and injunctive relief against Jennings, in his individual and official

capacities, and the Board Members[2] and, as to Jennings in his official capacity and

the Board Members, reinstatement and front pay.  Count One also seeks, as to

Jennings individually, compensatory damages, lost wages and/or backpay, and

punitive damages.  Count Two is for breach of contract, is brought against Jennings

in his official capacity only and the Board Members, and seeks specific performance

and/or injunctive relief, reinstatement, compensatory damages, and lost wages and/or

back pay.  Count Three is for Mandamus, is brought against Jennings in his official

capacity only and the Board Members, and seeks reinstatement, compensatory

---

[1]  By previous Order, all claims against Alabama A&M were dismissed with
prejudice.

[2]  Who are, as stated above, sued only in their official capacities.

2

damages, and lost wages and/or backpay.  Count Four is for deprivation of due process under the Alabama Constitution of 1901 both as to pre-termination due process and post-termination due process and seeks, as against Jennings in his official capacity and the Board Members, injunctive relief, reinstatement and front pay and, as against Jennings individually, compensatory damages, lost wages and/or back pay, and punitive damages.  Count Five is for deprivation of due process under the United States Constitution both as to pre-termination due process and post-termination due process, is brought pursuant to 42 U.S.C. § 1983, and seeks: as to Jennings in his individual and official capacities and the Board Members, injunctive relief; as to Jennings in his official capacity and the Board Members, reinstatement and front pay; and, as to Jennings in his individual capacity, compensatory damages, lost wages and backpay, and punitive damages.  Count Six is for wrongful termination under state law, and seeks: as to Jennings in his individual and official capacities and the Board Members, injunctive relief; as to Jennings in his official capacity and the Board Members, reinstatement and front pay; and, as to Jennings in his individual capacity, compensatory damages, lost wages and backpay, and punitive damages.

## II.    FACTUAL ALLEGATIONS

The factual allegations of Ogburia's Amended Complaint are set out as

follows[3].

1.      This cause arises out of actions taken by the defendants with regard to the employment of Sylvanus Ogburia (hereinafter "Ogburia" or "Plaintiff"), or otherwise failing to comply with the policies and procedures of Alabama Agricultural & Mechanical University (hereinafter "A&M") and/or other applicable law.

2.      Ogburia has been employed by A&M since August 25, 1980 as a faculty member in the Department of Business Administration at Alabama A&M University. He was initially hired as an Assistant Professor and in 1994 was promoted to the rank of Professor.  A&M has granted tenure to Ogburia.  As a tenured professor, Ogburia possessed a property right in his continued employment with A&M.  Accordingly, Ogburia's employment was terminable only in accordance with due process of law. Ogburia was also hired as the Director of A&M's Center for Entrepreneurship and Economic Development (hereinafter "CEED").

3.      Defendant  Dr.  Robert  Jennings  (hereafter  "Jennings")  is  sued individually and in his official capacity as President and as a Trustee of A&M.  He is the Chief Executive Officer of A&M and has the authority to order the relief requested by the plaintiff.

4.      A&M is governed by its trustees, each of whom are sued in their official capacities, and are as follows:  Jesse Cleveland, Hall Bryant, Jr., Martha Lynn Sherrod, Clinton Johnson, Sr., H. Lewis Gillis, Richard Davis, Robert Holmes, Jr., Emma Melton, Velma Tribue, and Oliver Washington, III (collectively hereafter "the Trustees").  The Trustees are responsible for adopting and enforcing the policies of A&M.  The Trustees are further responsible for ensuring that all employees of A&M receive the benefit of A&M's policies and for ensuring that the employees are not deprived of their constitutional and statutory rights.  The Trustees have the authority to order the relief requested by the plaintiff.

5.      Prior to December 16, 2005, Ogburia was informed that two employees of A&M had accused him of sexual harassment.

---

[3]  The exhibits referenced in the Amended Complaint are not set out in this Opinion, but are attached as exhibits to doc. 26 in the court file.

6.      On December 16, 2005, Ogburia was advised that a committee investigating one of the complaints had requested to "meet" with Ogburia.  A copy of the letter requesting an "interview" with the committee is attached hereto as Exhibit "A."  Nothing in that letter provides notice of intent to terminate Ogburia's employment.

7.      On January 5, 2006, Ogburia appeared at the requested time and location to be "interviewed" by the committee.  The committee refused to allow an attorney to accompany or advise Ogburia during the interview.  During the interview, Ogburia was never provided notice of an intent to terminate his employment.  The committee only interviewed Ogburia.  It did not allow Ogburia to listen to or cross-examine any witnesses against him, and did not provide him with any documentation against him.

8.      On February 10, 2006, A&M's Director of Human Resources issued a letter to Ogburia notifying him that the committee found no violation of the University's sexual harassment policy with regard to one of the complainants.  A copy of that correspondence is attached hereto as Exhibit "B."

9.      On February 20, 2006, Jennings issued a letter finding "just cause to terminate" Ogburia's employment based upon accusations by the second employee with the termination "effective at the end of the Spring 2006 semester."  A copy of that letter is attached hereto as Exhibit "C."

10.     Jennings's February 20, 2006 letter stated:  "As you may be aware, the administrative appeals process via the dean and vice president of academic affairs is available should you choose to challenge this action.  Finally the grievance procedure is outlined in faculty handbook section 5.7."

11.     On February 23, 2006, Ogburia provided a letter to Jennings, the Dean of the School of Business, the Vice-President for Academic Affairs and the Director of Human Resources.  A copy of that letter is attached hereto as Exhibit "D."  Ogburia demanded "all rights to which [he was] entitled as a tenured employee, or otherwise, of Alabama A&M University."  In particular, Ogburia demanded "a full hearing to demonstrate that termination of [his] employment [was] not warranted."

12.     On March 3, 2006, counsel for Ogburia provided a letter to Jennings, the Dean of the School of Business, the Vice-President for Academic Affairs and the

Director of Human Resources.  A copy of that letter is attached hereto as Exhibit "E."
In that letter, counsel re-asserted and demanded all rights to which Ogburia might be
entitled as a tenured employee or otherwise of Alabama A&M University.

13.    On March 6, 2006, counsel for A&M provided Ogburia's counsel with
a letter, which is attached hereto as Exhibit "F."  In that letter, counsel for A&M
stated:  "since the President has determined to end your client's employment, your
client, since he wants to contest the decision, should proceed with the grievance
process as set out in the faculty/ administrative staff handbook § 5.7 rather than the
normal appeal routine via his dean ...."

14.    On March 17, 2006, counsel for Ogburia provided University counsel
with a letter, which is attached hereto as Exhibit "G."  In that letter, Ogburia's
counsel expressed his opinion that "Dr. Ogburia is entitled to greater Due Process
than what may be provided in the grievance policy."  Ogburia's counsel further
elaborated on the elements of due process to which Ogburia was entitled.

15.    On March 21, 2006, Ogburia filed a grievance which is attached hereto
as Exhibit "H."  Ogburia clearly stated his objection to the grievance process and the
failure of that process to comply with due process requirements:  "I am filing this
grievance at the direction of President Jennings and Kenneth Hairston.   By
participating, I am non [sic] agreeing that the grievance process provides adequate
due process, nor am I waiving applicable objections that I may have to said process.
I hereby object to the University's failure to provide due process and object to the
President's insistence that I participate in a hearing that does not provide adequate
due process."

16.    On May 16, 2006, counsel for Ogburia provided A&M with a letter
which is attached hereto as Exhibit "I."  That letter maintained Ogburia's objection
to the grievance process and set forth additional policy violations by A&M.

17.    On May 22, 2006, A&M's Vice President for Academic Affairs issued
a letter which is attached hereto as Exhibit "J."  That letter promised a hearing before
Ogburia's peers within the next 21 days.

18.    On May 31, 2006, counsel for Ogburia delivered a letter to A&M's Vice
President for Academic Affairs which is attached hereto as Exhibit "K."  That letter

objected "to utilization of the grievance process on the grounds that it cannot satisfy Due Process."  The letter further set forth the requirements of due process which Ogburia expected.

19.    On June 12, 2006, counsel for Ogburia delivered another letter to A&M's Vice President for Academic Affairs, which is attached hereto as Exhibit "L." That letter noted that a hearing date had not been set and reiterated the due process objections.

20.    On June 15, 2006, the University's Director of Human Resources issued a letter to Ogburia stating that his "employment with Alabama A&M University ended May 15, 2006."  A copy of that letter is attached hereto as Exhibit "M."

21.    Ogburia has not received any salary from A&M since May 15, 2006 and A&M has not allowed him to return to the campus.

22.    Prior to June 29, 2006, Ogburia received notice from the Chair of A&M's grievance committee that a grievance hearing would be scheduled for June 29, 2006.

23.    A copy of A&M's grievance policy is attached hereto as Exhibit "N." Under that policy, the grievance committee possesses no power to render a decision, and merely presents a recommendation to Jennings, who can adopt or ignore that recommendation.

24.    On June 29, 2006, Ogburia appeared for the grievance committee hearing, which was chaired by Colonel Elliott M. Cunningham, III.

25.    Prior to the grievance committee hearing, Ogburia was not provided with a list of witnesses against him or with any documents that would be used to support termination of his employment.  The failure to provide Ogburia with a list of witnesses or documents was a violation of the grievance policy.

26.    No representative from A&M's administration was present during the grievance hearing on June 29, 2006, and no representative of the administration appeared at the hearing to present contentions in support of termination.

27.    A&M's grievance policy clearly provides that "the hearing shall begin with the administration presenting contentions upon which the decision was based."

28.    Rather than ruling that the Administration failed to prove grounds for Ogburia's termination, Cunningham proceeded to present contentions on behalf of the administration.  Cunningham verbally referenced documents which had never been provided to Ogburia, and which were not provided to Ogburia during the hearing.  Cunningham told Ogburia that the committee investigating the allegations of sexual harassment had recommended that Ogburia <u>not</u> be terminated from employment, but that Jennings overruled that recommendation and terminated Ogburia's employment.

29.    After Cunningham presented contentions on behalf of the administration, Ogburia presented witnesses and evidence in his defense.  After presentation of those witnesses and evidence, Colonel Cunningham closed the hearing and stated that a decision would be rendered in the time frame contemplated by the grievance procedures.

30.    During the hearing on June 29, 2006, Ogburia was denied the opportunity to cross examine any witnesses against him, because no witnesses were presented by the administration.

31.    On July 18, 2006, the chair of A&M's grievance committee provided Ogburia with an e-mail stating that the committee was "continuing [Ogburia's] hearing by questioning additional witnesses."  The chair notified Ogburia that the hearing would be re-commenced on July 21, 2006.  The additional witnesses were not called by Ogburia, but instead were called by the grievance committee.

32.    Ogburia attended the second hearing on July 21, 2006 and objected to numerous violations of the grievance policy.  A copy of Ogburia's objection is attached hereto as Exhibit "O."

33.    During the first hearing on June 29, 2006 and during the second hearing on July 21, 2006, Ogburia's attorney was allowed to be present, but was not allowed to question witnesses or participate in any manner in the hearings.

34.    At the second hearing on July 21, 2006, the Committee listened to

witnesses who described the process of the investigation of sexual harassment charges against Ogburia. The employees who complained of sexual harassment were never called by A&M and Ogburia never received an opportunity to cross-examine his accusers.

35.    On July 27, 2006, the chair of the University grievance committee provided Ogburia with a copy of the decision of the grievance committee. That correspondence is attached hereto as Exhibit "P."

36.    Rather than ruling on whether Ogburia should be terminated, the grievance committee issued the following recommendation: "Based on these findings it appears that Dr. Sylvanus Ogburia's due process rights may have been violated because the same committee was used to investigate two separate cases of sexual harassment which may have biased the final results. Because of this, it is recommended that the last case be investigated by a neutral committee before any final action is taken by the University."

37.    On August 7, 2006, counsel for Ogburia provided A&M's counsel with a letter which is attached hereto as Exhibit "Q."

38.    Neither Jennings nor the Trustees ever provided procedural due process to Ogburia and this action followed.

39.    In answers to limited discovery authorized by this Court, the defendants have stated that "Dr. Ogburia was terminated pursuant to the procedures regarding sexual harassment, and not the procedures regarding tenured faculty members." See Defendants' Answers to Interrogatories, attached hereto as Exhibit "R."

40.    A&M's policies regarding sexual harassment are attached hereto as Exhibit "S." Those policies fail to provide notice or a hearing to a tenured employee accused of sexual harassment, and those policies do not satisfy the requirements of procedural due process.

41.    Jennings is the Chief Executive Officer of A&M. He is responsible for the administration of A&M and exercises general supervision of A&M's affairs. Jennings is responsible for hiring and firing of all employees. He is responsible for enforcement of A&M's policies. He is responsible for providing tenured employees

with procedural due process prior to termination of employment.

42.     Under Alabama law, the Trustees possess "exclusive jurisdiction, power and authority with regard to the supervision, management and control of Alabama Agricultural and Mechanical University." Ala. Code § 16-49-24. Consequently, the Trustees are responsible for ensuring compliance with A&M's policies and ensuring that tenured employees receive procedural due process prior to termination.

43.     Jennings and the Trustees violated Ogburia's procedural due process rights by failing to provide pre-termination notice of termination or a hearing of any kind prior to termination.

44.     Jennings and the Trustees violated Ogburia's procedural due process rights by failing to provide post-termination due process, including:

      a.     Failure to provide a timely post-termination hearing;

      b.     Failure to provide a neutral hearing officer and/or impartial tribunal;

      c.     Failure to provide a neutral ultimate decision-maker;

      d.     Failure to provide a list of witnesses against him;

      e.     Failure to provide a description of the nature of the evidence against him;

      f.     Failure to allow cross-examination of any witnesses against him;

      g.     Failure to allow meaningful assistance of counsel during any hearing; and,

      h.     To the extent intended to provide due process, failure to adhere to the University's own grievance and/or termination policies.

45.     Ogburia notified Jennings of Ogburia's procedural due process rights and of Ogburia's demand to receive due process.

46.     Despite Ogburia's demand for due process, Jennings refused to recognize Ogburia's due process rights or provide Ogburia with procedural due process.

47.     As a result of the violations of Ogburia's rights, Ogburia has suffered mental distress and emotional anguish.

Additionally, as to Count Two (Breach of Contract), Ogburia's Amended

Complaint alleges:[4]

52.     During the times of Ogburia's employment with the defendants, the University's policies were a part of Ogburia's employment contract.

53.     Jennings (in his official capacity) and the Trustees (in their official capacities) breached Ogburia's employment contract by failing to follow A&M's grievance policy, policy on termination of tenured professors, or sexual harassment policy.

54.     Jennings (in his official capacity) and the Trustees (in their official capacities) were under a legal or ministerial duty to follow A&M's policies.

55.     Jennings (in his official capacity) and the Trustees (in their official capacities) acted under a mistaken interpretation of law in failing to follow A&M's policies.

Additionally, as to Count Three (Writ of Mandamus), Ogburia's Amended

Complaint alleges:

56.     Jennings (in his official capacity) and the Trustees (in their official capacities) were bound by Alabama law to comply with their duly adopted policies and procedures, and they were subject to a legal or ministerial duty to comply with those policies;

_____

[4] Paragraphs 48 - 51 pertain to Plaintiff's claim for declaratory and injunctive relief, which is Count One of the Amended Complaint.

57.     Jennings (in his official capacity) and the Trustees (in their official capacities) breached Ogburia's employment contract, as well as violated the rules, practices, policies, and procedures of A&M, including, but not limited to, A&M's grievance policy, the policy on termination of tenured professors and A&M's sexual harassment policy.

58.     Jennings (in his official capacity) and the Trustees (in their official capacities) acted under a mistaken interpretation of law in failing to follow A&M's policies.

Additionally, as to Count Four (Deprivation of Due Process under the Alabama Constitution), Ogburia's Amended Complaint alleges:

59.     As a tenured professor, Ogburia possessed a property right in continued employment with A&M.

60.     Jennings (in his individual and official capacities) and the Trustees (in their official capacities) failed to provide Ogburia with pre-termination procedural due process by denying Ogburia notice or a hearing prior to termination of his employment.

61.     Jennings (in his individual and official capacities) and the Trustees (in their official capacities) failed to provide Oburia with post-termination procedural due process, including:

   a. Failure to provide a timely post-termination hearing;

   b. Failure to provide a neutral hearing officer and/or impartial tribunal;

   c. Failure to provide a neutral ultimate decision-maker;

   d. Failure to provide a list of witnesses against him;

   e. Failure to provide a description of the nature of the evidence against him;

f.      Failure to allow cross-examination of any witnesses against him;

g.      Failure to allow meaningful assistance of counsel during any hearing; and,

h.      To the extent intended to provide due process, failure to adhere to the University's own grievance and/or termination policies.

62.      The actions of Jennings and the Trustees have deprived the plaintiff of procedural due process of law, as guaranteed by the Alabama Constitution of 1901.

63.      Jennings (in his official capacity) and the Trustees (in their official capacities) were under a legal or ministerial duty to provide Ogburia with procedural due process of law and failed to do so.

64.      Jennings (in his official capacity) and the Trustees (in their official capacities) acted under a mistaken interpretation of the law in terminating Ogburia's employment without providing procedural due process of law.

65.      Jennings (in his individual capacity) acted willfully, maliciously, fraudulently, in bad faith, beyond his authority or under a mistaken interpretation of law in terminating Ogburia's employment without providing procedural due process of law.

Additionally, as to Count Five (Deprivation of Procedural Due Process Under the United States Constitution), Ogburia's Amended Complaint alleges:

66.      As a tenured professor, Ogburia possessed a property right in continued employment with A&M.

67.      At the time of termination of Ogburia's employment, it was clearly established that a tenured employee could only be terminated after receiving pre-termination notice and a hearing, and post-termination notice and a hearing.

68.      Jennings (in his individual and official capacities) and the Trustees (in their official capacities) failed to provide Ogburia with pre-termination procedural

13

due process by denying Ogburia notice or a hearing prior to termination of his employment.

69.     Jennings (in his individual and official capacities) and the Trustees (in their official capacities) failed to provide Oburia with post-termination procedural due process, including:

a.      Failure to provide a timely post-termination hearing;

b.      Failure to provide a neutral hearing officer and/or impartial tribunal;

c.      Failure to provide a neutral ultimate decision-maker;

d.      Failure to provide a list of witnesses against him;

e.      Failure to provide a description of the nature of the evidence against him;

f.      Failure to allow cross-examination of any witnesses against him;

g.      Failure to allow meaningful assistance of counsel during any hearing; and,

h.      To the extent intended to provide due process, failure to adhere to the University's own grievance and/or termination policies.

70.     Ogburia notified Jennings of Ogburia's procedural due process rights and of Ogburia's demand to receive due process.

71.     Despite Ogburia's demand for due process, Jennings refused to recognize Ogburia's due process rights or provide Ogburia with procedural due process.

72.     Jennings's actions (in his individual capacity) were wholly arbitrary, capricious, and unrelated to any legitimate state objective, and were motivated by bad faith, were unsupported by any rational basis, and violated clearly established law.

14

73.    The acts perpetrated upon Ogburia by Jennings (in his individual and official capacities) and the Trustees (in their official capacities) were accomplished under color of state law, statute, ordinance, regulations, custom or usage in violation of the United States Constitution as applied to the States by 42 U.S.C. § 1983.

Additionally, as to Count Six (Wrongful Termination), Ogburia's Amended Complaint alleges:

74.    Pursuant to *Hardric v. Stevenson*, 843 So.2d 206, 210 (Ala.Civ.App. 2002), "[t]he dismissal of a public employee who is entitled to a pretermination hearing, without such a hearing, is a wrongful act constituting a tort under Alabama law."

75.    As a tenured employee, Ogburia was entitled to a pretermination hearing, but did not receive such a hearing prior to termination of his employment.

76.    Jennings (in his individual and official capacities) and the Trustees (in their official capacities) terminated Ogburia's employment without providing a pretermination hearing.

77.    Jennings (in his official capacity) and the Trustees (in their official capacities) were subject to a legal or ministerial duty to provide Ogburia with a pretermination hearing.

78.    Jennings (in his official capacity) and the Trustees (in their official capacities) acted under a mistaken interpretation of the law in terminating Ogburia's employment without providing a pretermination hearing.

79.    Jennings (in his individual capacity) acted willfully, maliciously, fraudulently, in bad faith, beyond his authority or under a mistaken interpretation of law in terminating Ogburia's employment without a pretermination hearing.

## III.   DEFENDANTS' PENDING MOTION TO DISMISS

A.    <u>Motion to Dismiss Standard</u>

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *as abrogated by Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955 (2007); *see also* Fed. R. Civ. P. 8(a).

A plaintiff must provide the grounds of his entitlement, but Rule 8 does not require "detailed factual allegations." *Twombly*, ___ U.S. ___, 127 S. Ct. at 1964-65 (2007) (quoting *Conley*, 355 U.S. at 47). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly* at 1969. In evaluating a motion to dismiss, the court assumes that all factual allegations set forth in the complaint are true, *see United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all factual allegations in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).

"'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007) (quotation marks, citations, and

16

brackets omitted).  Furthermore, the plaintiff's factual allegations, when assumed to

be true, 'must be enough to raise a right to relief above the speculative level . . . .' *Id.*

at ___, 127 S. Ct. at 1965."  *Mills v. Foremost Insurance Company*, No. 06-16458,

(11th Cir. Jan. 4, 2008) (quotations and omissions as in original).

> B.     The Qualified Immunity Standard

Qualified immunity may be claimed by an individual defendant who is being

sued personally for actions that he or she took while acting under color of state law.

*Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S. Ct. 2727, 2736, 73 L. Ed. 2d 396

(1982).  Qualified immunity is a question of law to be decided by the court prior to

trial.  It is designed to allow officials who are entitled to qualified immunity to avoid

the expense and disruption of going to trial, and is not merely a defense to liability.

*Ansley v. Heinrich,* 925 F.2d 1339, 1345 (11th Cir.1991).  The only person who is

sued individually in this case is Jennings.  Therefore, the court's analysis of the

adequacy of Ogburia's complaint under the qualified immunity standard will be

limited to the adequacy of the allegations against Jennings individually.

The Supreme Court has referred to the qualified immunity analysis as the

"objective-reasonableness" test.  *Harlow,* 457 U.S. at 815-19, 102 S. Ct. at 2736-39.

Under this test, public officials performing discretionary functions which would

objectively appear to be within the official's authority have qualified immunity if their

challenged conduct did not violate a clearly established constitutional right of which a reasonable person would have known, given the circumstances and information possessed by the official at the time of the conduct. *Id.* at 818, 102 S. Ct. at 2738.

The objective-reasonableness test is a two part analysis. First, the defendant public official must prove that he was performing duties within the scope of his discretionary authority when the alleged violation occurred. *Hutton v. Strickland,* 919 F.2d 1531, 1537 (11th Cir.1990) (citations omitted). A government official may prove that he was acting within the scope of his authority by showing facts and circumstances that would indicate that his actions were part of his normal job duties and were taken in accordance with those duties. *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988); *Cronen v. Texas Dep't of Human Services,* 977 F.2d 934, 939 (5th Cir.1992) ("An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity.").

Once the defendant proves that he was acting within his discretionary authority, the burden then shifts to the plaintiff to prove that the defendant did not act in good faith. *Hutton,* 919 F.2d at 1537. The plaintiff may meet this burden by establishing that "the defendant public official's actions 'violated clearly established constitutional law.'" *Id.* (citations omitted). The second prong of the objective-reasonableness test has two sub-parts. *Id.* at 1538. First, the court must find that the constitutional law

18

in question was clearly established when the alleged violation occurred. *Id.* Second, the court must find that "there is a genuine issue of fact regarding the government official's engaging in conduct violative of the clearly established law." *Id.*

"Clearly established" means that "[t]he contours of the [violated] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987).

This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent. *Id.* (citations omitted). Under this standard, qualified immunity is available to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).

To defeat a qualified immunity defense, the plaintiff bears the burden of showing that the "legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, ... the law clearly proscribed the actions the defendant took." *Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir.1989), *cert. denied,* 493 U.S. 831, 110 S. Ct. 101, 107 L. Ed. 2d 65 (1989) ( quoting *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S. Ct. 2806, 2816, 86 L. Ed. 2d 411 (1985)). In

19

determining whether the plaintiff meets this burden, the court is guided by the

Eleventh Circuit's direction in *Nicholson v. Georgia Dep't of Human Resources,* 918

F.2d 145 (11th Cir.1990):

> In satisfying this burden, the plaintiff cannot point to sweeping
> propositions of law and simply posit that those propositions are
> applicable. Instead, the plaintiff must draw the court's attention toward
> a more particularized and fact-specific inquiry.  Under this inquiry, the
> plaintiff need not point to one or more cases that resolved the precise
> factual issues at issue in his or her case.  '[A]lthough the standard is
> fact-specific, it is not one of factual rigidity.'  Rather, the plaintiff need
> only show that there existed sufficient case law establishing the contours
> of his or her constitutional rights such that the unlawfulness of the
> defendant's conduct would have been apparent to a reasonable official
> in the same circumstances and possessing the same knowledge as the
> defendant.

*Id.* at 147 (citations omitted).

If the plaintiffs satisfy their initial burden and show that the rights that

defendants' conduct allegedly violated were clearly established at the time of

defendants' conduct, the court must then determine whether the plaintiffs have

adduced evidence sufficient to create a genuine issue of fact as to whether defendants

actually engaged in conduct that violated clearly established law.  *Rich,* 841 F.2d at

1564; *see also Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1503 (11th

Cir.1990).  In this undertaking, the court must draw all inferences of fact in favor of

the plaintiff when the plaintiff is the party opposing the motion. *Stewart,* 908 F.2d at

1503.

Thus, the court must determine whether Jennings acted in a way that was clearly unconstitutional.  In other words, the court must here decide if Plaintiff's amended complaint sufficiently alleges facts which, if true, could establish that Jennings violated clearly established law.

C.    Analysis

Defendants have moved to dismiss all Plaintiffs' claims against all Defendants. They allege that (1) the complaint fails to state a claim for which relief can be granted (Motion, doc. 27, par. 1.); (2) Plaintiff has failed to exhaust his administrative remedies (*Id.*, par. 2.); and (3) both the pre-termination process afforded to the Plaintiff and the post-termination process afforded to the Plaintiff were adequate. (*Id.*, par.3.).  Alternatively, they allege that Jennings is entitled to qualified immunity because "it was not clearly established that the process that was afforded the [P]laintiff in relation to his termination was inadequate to the extent that it resulted in a clear violation of his constitutional rights of which any person would have known." (*Id.*, par. 4.).   Additionally, they argue that all claims against the Board Members are "due to be dismissed because they are not alleged to have personally been involved in the conduct which allegedly violated Plaintiff's constitutional rights, and *respondeat superior* theories are unavailable under 42 U.S.C. § 1983." (*Id.*, par.

21

5.).  Further, Defendants argue that all of Plaintiff's claims against Jennings in his individual capacity "are barred by absolute immunity because they are essentially claims against the State."  (*Id.*, par. 6.).  Next, Defendants assert that Jennings (presumably in both his individual and official capacities) is entitled to state-agent immunity from all of Plaintiff's claims against him.  (*Id.*, par. 7.).  Next, Defendants assert that "[a]ll of Plaintiff's claims for monetary damages against ... Jennings and the Trustees in their official capacities are due to be dismissed as barred by Section 14 of the Alabama Constitution and the Eleventh Amendment of the United States Constitution.  (*Id.*, par. 8.).  Next, Defendants assert that Count Two (breach of contract) and Count Six (wrongful termination) "against ... Jennings (in his individual and official capacities) and the Trustees (in their official capacities[5]) fail to state claim ... because such claims are barred by Section 14 of the Alabama Constitution." (*Id.*, par. 9.).  Finally, Defendants assert that "[t]o the extent Count Four seeks monetary damages for ... deprivation of due process under the Alabama Constitution of 1901, such claim is due to be dismissed because Alabama does not recognize [such a] private cause of action." (*Id.*, par. 10.).  The court will address these arguments in the order they were made.

------

[5] As stated supra, the Board of Trustees are sued <u>only</u> in their official capacities.

(1)   Failure to State a Claim for Which Relief Can Be Granted.

While Defendants assert, in their Motion, that the complaint fails to state a claim for which relief can be granted, they make no argument and cite no authority for this sweeping proposition.  Rather, they choose to argue specific defects or affirmative defenses as to specific claims and specific Defendants.  Therefore, the court treats this assertion as mere boiler plate, and proceeds to the specific arguments that the Defendants actually make.

(2)   Failure to Exhaust Administrative Remedies.

In their initial brief (doc. 28), Defendants string cite a long list of cases that are not Section 1983 cases, including, prominently, *McKart v. United States*, 395 U.S. 185 (1969), and imply that Plaintiff had some kind of heightened pleading requirement.  ("The plaintiff does not allege in his Amended Complaint that he has exhausted his administrative remedies." *Id*., p. 4).  However, none of the cases that Defendants rely on establish such a pleading requirement.  Further, Defendants fail, until their responsive brief (doc. 33), to even acknowledge that "generally exhaustion has not been required in § 1983 actions" and then they argue that "it only makes sense that [a] teacher [who is alleging violations of procedural due process] must actually complete the process before complaining of its inadequacy." (*Id*., p. 25.) Defendants cite no authority for their "just plain sense" argument, unless the court finds it in the

First Circuit case relied upon by Defendants earlier in their brief.  That case is *Beattie v. Roberts*, 436 F.2d 747 (1st Cir. 1971).  However, *Beattie* was decided <u>before</u> the Supreme Court case cited by Plaintiff, *Patsy v. Board of Regents*, 457 U.S. 496, 501 (1982) which rejected "Respondents [argument] that we should ... adopt the ... exhaustion rule, which was based on *McKart v. United States* ..." and instead held that, "[b]ased on the legislative histories of both § 1983 and § 1997e, we conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."  *Patsy*, 457 U.S. at 516.  *See also*, *Tallahassee Memorial Regional Medical Center v. Cook*, 109 F.3d 693, 702 (11th Cir. 1997) ("It is well established that a claim under 42 U.S.C. § 1983 cannot be barred by a plaintiff's failure to exhaust state remedies with respect to unreviewed administrative actions.")  Therefore, *Beattie* does not persuade the court.

In their reply brief, Defendants alternatively argue that Plaintiff "has waived his due process objections by failing to fully participate in the procedures that were available to him."  (Doc. 33, p. 25).  Defendants again rely on a pre-*Patsy* decision, *Kaprelian v. Texas Woman's University*, 509 F.2d 133, 139 (5th Cir. 1975) as their sole support.  Clearly, any holding that a § 1983 plaintiff's failure to exhaust state administrative remedies is a waiver of his or her § 1983 claim was abrogated by *Patsy*.

24

Plaintiff's state law claims are inextricably interwoven with his § 1983 claims. The court will not hold Plaintiff's § 1983 claims hostage to any purported duty to exhaust administrative remedies as to his state law claims.  Because the § 1983 claims are "cognizable" before this court without any requirement of exhaustion of state administrative procedures, the court will not dismiss his state law claims on that basis at this time, either.  Accordingly, Defendants' Motion to Dismiss based on failure to exhaust state administrative  remedies is due to be **DENIED**.

(3)   Dismissal based on adequacy, as a matter of law, of both the pre-termination process and the post-termination process afforded to the Plaintiff.

Defendants seek dismissal of all of Plaintiff's claims because all of the claims "revolve around the alleged deprivation of his due process rights, and there has been no such deprivation." (Doc. 28, p. 12).  That is, Defendants ask this court to find that, based on the allegations in the Amended Complaint and the documents attached to that complaint, as a matter of law, Plaintiff's due process rights were not violated. The court declines to do so, and reminds the parties that the motion pending is a motion to dismiss, not a motion for summary judgment.  (*See* section III. A. *supra*, setting out standard of review for motions to dismiss.)

Pertinently, all but one of the cases cited by the Defendants on this point in any of their three (3) briefs are cases in which the issue of adequacy of the due process

25

received was decided either at summary judgment or at or after a trial on the merits. (The court acknowledges that Defendants discuss *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). In *Loudermill*, the Supreme Court affirmed the Sixth Circuit's <u>reversal</u> of a district court that had granted a 12(b)(6) motion to dismiss on the basis that the plaintiffs had, as a matter of law, been provided all the due process that they were entitled to.) The court suspects that it is not from lack of looking that the parties apparently were not able to find cases that held that a similarly-situated plaintiff's claims were due to be dismissed because, as a matter of law, the claims alleged, taken as true, established that due process had been given. As Defendants state, the Supreme Court has held:

> "[D]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Expressing as it does in its ultimate analysis respect enforced by law for that feeling of just treatment which has been evolved through centuries of Anglo-American constitutional history and civilization, "due process" cannot be imprisoned within the treacherous limits of any formula.

*Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 162, 71 S. Ct. 624, 643 (1951) (quoted in Defendants' surreply brief, doc. 39, at 3-4).

The court finds that the allegations in Plaintiff's Amended Complaint, taken, as the court must, as true for purposes of this Motion, could state a claim that he was deprived of his right to procedural due process, both as to the pre-termination process

and as to the post-termination process.

        a.      The Due Process Standard

The parties agree that *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 is

the "seminal authority" on "pre-deprivation due process."   (Plaintiff's brief in

opposition, doc. 30, p. 6.)  They also agree that *Stewart v. Bailey*, 556 F.2d 281 (5th

Cir. 1977) is controlling law in the Eleventh Circuit on the issue.[6]

*Loudermill* instructs that:

> The essential requirements of due process ... are notice and an
> opportunity to respond. The opportunity to present reasons, either in
> person or in writing, why proposed action should not be taken is a
> fundamental due process requirement.... The tenured public employee
> is entitled to oral or written notice of the charges against him, an
> explanation of the employer's evidence, and an opportunity to present
> his side of the story.

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546.

        b.      The Plaintiff's Allegations of Denial of Pre-Termination
                  Due Process State a Claim.

Plaintiff has alleged the following.  He was notified of "an alleged sexual

harassment complaint" against him by two employees of Alabama A&M (Amended

---

   [6] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir.
1981) (holding that decisions of the former Fifth Circuit handed down prior to the
close of business on September 30, 1981, are binding in the Eleventh Circuit).

Complaint, doc. 26, par. 5).[7]  He was not notified that he might be terminated.[8]  (*Id.*, par. 6, 7, 43).  He was "interviewed" about these complaints.  (*Id.*, par. 7).  He was not provided any documentation against him.  (*Id.*).  He was not allowed to have an attorney present.  (*Id.*).  He was then notified that the committee found "no violation of the University's sexual harassment policy with regard to one of the complainants." (*Id.*, par. 8).  Then, on February 20, 2006, Jennings issued a letter finding "just cause to terminate" Plaintiff "based upon accusations by the second employee."  (*Id.*, par. 9).  He was advised of the administrative appeals process.  (*Id.*, par. 10).  He demanded "all rights to which [he was] entitled" and "a full hearing" and objected that the University's procedures did not provide him with due process.  (*Id.*, par. 11, 12; see also par. 14, 15, 16, 18).  Before any appeals hearing was held, on June 15, 2006, the University sent Plaintiff a letter stating that his "employment with Alabama A&M University ended May 15, 2006."  (*Id.*, par. 20).  Plaintiff was not provided "a hearing of any kind prior to termination."  (*Id.*, par. 43).  Plaintiff has not received any salary from Alabama A&M since May 15, 2006, and the University has not allowed him to return to the campus.  (*Id.*, par. 21).

───────────────

[7] But in fact there were four such complaints - and he was never told the name of one of the accusers.

[8] Although Defendants argue that he "undoubtedly knew" that he might be terminated.

28

These allegations are sufficient to state a claim of pre-termination due process violation. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (The essential requirements of due process are notice and an opportunity to respond and present reasons why proposed action should not be taken). *Nicholson v. Gant*, 816 F.2d 591, 598 (11th Cir. 1987)(the pre-termination opportunity to respond must be meaningful). Therefore, to the extent that Defendants' Motion to Dismiss is based on their contention that Plaintiff has failed to state a claim of deprivation of pre-termination due process, the Motion is due to be **DENIED**.

> c.   The Plaintiff's Allegations of Denial of Post-Termination Due Process State a Claim.

Plaintiff has alleged the following in support of his post-termination due process claim.  The appeals process called for a grievance committee hearing.  That hearing was held on June 29, 2006, and Plaintiff and his attorney attended.  (*Id*., par. 24, 33).  In violation of the University's grievance policy, Plaintiff was not provided, prior to the hearing, with a list of witnesses against him or with any documents that would be used to support termination of his employment.  (*Id*., par. 25).  In violation of the University's grievance policy, no representative of the administration was present to present contentions in support of Plaintiff's termination.  (*Id*., par. 26, 27). Instead, the chairman of the grievance committee "present[ed] contentions on behalf

29

of the adminstration," verbally referencing documents which had never been provided to Plaintiff and which were not provided to Plaintiff during the hearing.  (*Id*., par. 28).  During the hearing, Plaintiff was denied the opportunity to cross examine any witnesses, because no witnesses were presented by the administration.  (*Id*., par. 30).  A second hearing was held on July 21, 2006, which Plaintiff and his attorney attended.  (*Id*., par. 32, 33).  The hearing was called by the grievance committee in order for witnesses for the administration to appear and be questioned.  (*Id*., par. 31).  Plaintiff's attorney "was not allowed to question witnesses or participate in any manner" at either of the hearings.  (*Id*., par. 33).   At the second hearing, "the Committee listened to witnesses who described the process of the investigation of sexual harassment charges against [Plaintiff].  The employees who complained of sexual harassment were never called ... and [Plaintiff] never received an opportunity to cross-examine his accusers."  (*Id*., par. 34).  The grievance committee did not rule on whether Plaintiff should be terminated.  (*Id*., par. 36).  Instead, they recommended "[B]ased on these findings it appears that [Plaintiff's] due process rights may have been violated because the same committee was used to investigate two separate cases of sexual harassment which may have biased the final results.  Because of this, it is recommended that the last case be investigated by a neutral committee before any final action is taken by the University."  (*Id*., par. 36).  Plaintiff "was terminated

pursuant to procedures regarding sexual harassment, and not the procedures regarding tenured faculty members." (*Id*., par. 39).  The policies regarding sexual harassment "fail to provide notice or a hearing to a tenured employee accused of sexual harassment." (*Id*., par. 40).

These allegations are sufficient to state a claim of post-termination due process violation.  At no time was Plaintiff allowed to confront, much less cross-examine, his accusers.  *Kelley v. Smith*, 764 F.2d 1412 (11th Cir. 1985), *Adams v. Sewell*, 946 F.2d 757 (11th Cir. 1991) (both *Kelley* and *Adams* reversed <u>on other grounds</u> in *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994)).  Defendants say that "[t]he precedential value of both these cases is questionable at best in light of the fact that both have been reversed by *McKinney v. Pate* ...." (Defendant's reply brief, doc. 33, at 12, n.4).  However, nothing in *McKinney v. Pate* abrogates the proposition for which they are cited by Plaintiff.  *McKinney v. Pate* overruled all prior decisions, including *Kelley* and *Adams*, to the extent that they "granted pretextually terminated employees section 1983 causes of action premised on substantive due process violations." (*McKinney v. Pate*, 20 F.3d 1550, 1560).  Thus, *Kelley* and *Adams* are still good law in this circuit for the proposition that an employee must receive, as a matter of <u>procedural</u> due process during a post-termination hearing, the opportunity to confront and cross-examine his accusers.  *Chambers v. Thompson*, 150 F.3d 1324, 1326 (11th Cir. 1998)

("We are bound to follow a prior panel or en banc holding, except where that holding has been overruled or undermined to the point of abrogation by a subsequent en banc or Supreme Court decision.").  Therefore, to the extent that Defendants' Motion to Dismiss is based on their contention that Plaintiff has failed to state a claim of deprivation of post-termination due process, the Motion is due to be **DENIED**.

(4)    Dismissal of Jennings in his individual capacity under qualified immunity.

Next, Defendants argue that Jennings is due to be dismissed under qualified immunity because "it was not clearly established that the process that was afforded the [P]laintiff in relation to his termination was inadequate to the extent that it resulted in a clear violation of his constitutional rights of which any person would have known." ((Motion, doc. 27, par. 4).  In their brief, Defendants argue that this applies to all claims asserted against him.  (Brief, doc. 28, p. 12).

The standard for analysis of qualified immunity claims is set forth at section III. B., supra.  As explained in that section, qualified immunity is available when persons are sued in their individual capacities.  Thus, on its face, Defendants' argument that claims against Jennings in his official capacity are due to be dismissed under qualified immunity principles is without support.  To the extent that Defendants so argue, their Motion is due to be **DENIED**.

32

As to whether Plaintiff's claims against Jennings in his individual capacity are barred by qualified immunity, the only matter which appears to be in dispute is whether Plaintiff's claims of constitutional violations were "clearly established."

      a.    Claims of violation of pre-termination due process rights.

As stated *supra*, Plaintiff alleges the following.  He was notified of "an alleged sexual harassment complaint" against him by two employees of Alabama A&M (Amended Complaint, doc. 26, par. 5).[9]  He was not notified that he might be terminated.[10]  (*Id*., par. 6, 7, 43).  He was "interviewed" about these complaints.  (*Id*., par. 7).  He was not provided any documentation against him.  (*Id*.).  He was not allowed to have an attorney present.  (*Id*.).  He was then notified that the committee found "no violation of the University's sexual harassment policy with regard to one of the complainants."  (*Id*., par. 8).  Then, on February 20, 2006, Jennings issued a letter finding "just cause to terminate" Plaintiff "based upon accusations by the second employee."  (*Id*., par. 9).  He was advised of the administrative appeals process.  (*Id*., par. 10).  He demanded "all rights to which [he was] entitled" and "a full hearing" and objected that the University's procedures did not provide him with

---

[9] But in fact there were four such complaints - and he was <u>never</u> told the name of one of the accusers.

[10] Although Defendants argue that he "undoubtedly knew" that he might be terminated.

due process.  (*Id*., par. 11, 12; see also par. 14, 15, 16, 18).  Before any appeals hearing was held, on June 15, 2006, the University sent Plaintiff a letter stating that his "employment with Alabama A&M University ended May 15, 2006."  (*Id*., par. 20).  Plaintiff was not provided "a hearing of any kind prior to termination." (*Id*., par. 43).  Plaintiff has not received any salary from Alabama A&M since May 15, 2006, and the University has not allowed him to return to the campus.  (*Id*., par. 21).

The court agrees with Plaintiff that these allegations state violations of procedural pre-termination due process rights that were, under *Loudermill*, clearly established.  *See* discussion, section III. C. 3. b., *supra*.  Accordingly, Defendants' Motion to Dismiss Plaintiff's claims of pre-termination due process violations against Jennings in his individual capacity under qualified immunity is due to be **DENIED**.

b.    Claims of violation of post-termination due process rights.

Plaintiff has alleged the following.  The appeals process called for a grievance committee hearing.  That hearing was held on June 29, 2006, and Plaintiff and his attorney attended.  (*Id*., par. 24, 33).  In violation of the University's grievance policy, Plaintiff was not provided, prior to the hearing, with a list of witnesses against him or with any documents that would be used to support termination of his employment. (*Id*., par. 25).  In violation of the University's grievance policy, no representative of the administration was present to present contentions in support of Plaintiff's

34

termination.  (*Id*., par. 26, 27).  Instead, the chairman of the grievance committee "present[ed] contentions on behalf of the adminstration," verbally referencing documents which had never been provided to Plaintiff and which were not provided to Plaintiff during the hearing.  (*Id*., par. 28).  During the hearing, Plaintiff was denied the opportunity to cross examine any witnesses, because no witnesses were presented by the administration.  (*Id*., par. 30).

A second hearing was held on July 21, 2006, which Plaintiff and his attorney attended.  (*Id*., par. 32, 33).  The hearing was called by the grievance committee in order for witnesses for the administration to appear and be questioned.  (*Id*., par. 31).  Plaintiff's attorney "was not allowed to question witnesses or participate in any manner" at either of the hearings.  (*Id*., par. 33).  At the second hearing, "the Committee listened to witnesses who described the process of the investigation of sexual harassment charges against [Plaintiff].  The employees who complained of sexual harassment were never called ... and [Plaintiff] never received an opportunity to cross-examine his accusers."  (*Id*., par. 34).  The grievance committee did not rule on whether Plaintiff should be terminated.  (*Id*., par. 36).  Instead, they recommended "Based on these findings it appears that [Plaintiff's] due process rights may have been violated because the same committee was used to investigate two separate cases of sexual harassment which may have biased the final results.  Because of this, it is

recommended that the last case be investigated by a neutral committee before any final action is taken by the University." (*Id*., par. 36).  Plaintiff "was terminated pursuant to procedures regarding sexual harassment, and not the procedures regarding tenured faculty members." (*Id*., par. 39).  The policies regarding sexual harassment "fail to provide notice or a hearing to a tenured employee accused of sexual harassment." (*Id*., par. 40).

The court agrees with Plaintiff that these allegations state violations of procedural pre-termination due process rights that were, under *Loudermill*, *Kelley*, and *Adams*, clearly established.  *See* discussion, section III. C. 3. c., *supra*. Therefore, Defendants' Motion to Dismiss Plaintiff's claims of post-termination due process violations  against Jennings in his individual capacity under qualified immunity is due to be **DENIED**.

5.    Dismissal of all claims against the Board Members because they are not alleged to have personally been involved in the conduct which allegedly violated Plaintiff's constitutional rights.

Defendants argue that, because the Amended Complaint fails to contain any allegations of "personal involvement in the alleged constitutional deprivations by the [Board Members]", the Board Members are due to be dismissed (from the case) "because respondeat superior theories are unavailable under 42 U.S.C. § 1983." (Brief, doc. 28, at 14).  The court notes that, on its face, this argument only applies

to Plaintiff's claims under 42 U.S.C. § 1983.  Further, Defendants' statement of the

standard, while correct insofar as it goes, is incomplete.

> "It is well established in this circuit that supervisory officials are not
> liable under § 1983 for the unconstitutional acts of their subordinates
> "on the basis of respondeat superior or vicarious liability." *Belcher v.
> City of Foley,* 30 F.3d 1390, 1396 (11th Cir.1994) (citation and
> quotation omitted). "Supervisory liability [under § 1983] occurs either
> when the supervisor personally participates in the alleged constitutional
> violation <u>or when there is a causal connection between actions of the
> supervising official and the alleged constitutional deprivation.</u>

*Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (emphasis supplied). "[T]he

causal connection may be established and supervisory liability imposed where the

supervisor's improper 'custom or policy ... result[s] in deliberate indifference to

constitutional rights.' *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991) (citing

*Zatler v. Wainwright,* 802 F.2d 397 (11th Cir.1986))." (*Id.*)

Plaintiff has alleged that he "was terminated pursuant to procedures regarding

sexual harassment, and not the procedures regarding tenured faculty members."

(Amended Complaint, doc. 26, par. 39).  He has also alleged that the policies

regarding sexual harassment "fail to provide notice or a hearing to a tenured

employee accused of sexual harassment." (*Id.*, par. 40).  He has further alleged that

he did not receive notice or a hearing prior to his termination. (*Id.*, par. 68).  Finally,

he has alleged that the Board Members "are responsible for ensuring that tenured

employees receive procedural due process prior to termination." (*Id.*, par. 42). Plaintiff has alleged a policy of Alabama A&M, set by the Board Members (or for which the Board Members were responsible), that violated his rights to pre-termination due process. Therefore, the Motion to Dismiss is due to be **DENIED** as to Plaintiff's Section 1983 claims against the Board Members.

6.  <u>Dismissal of all of Plaintiff's claims against Jennings in his individual capacity as barred by absolute immunity</u>.

Defendants argue that all of Plaintiff's claims against Jennings in his individual capacity are barred by absolute immunity because they are essentially claims against the State of Alabama. (Motion, doc. 27, par. 6). In their brief, Defendants explain that such claims are therefore barred pursuant to both Section 14 of the Alabama Constitution and the Eleventh Amendment of the United States Constitution. (Brief, doc. 28, p. 15). In this court's previous Memorandum Opinion and Order entered March 5, 2007, (doc. 19), this court explained that, because Defendants removed this action from state court, under *Lapides v. Board of Regents of Univ. of Ga.*, 535 U.S. 613, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002), Defendants have waived their Eleventh Amendment immunity as to state law claims, but only to the extent that the State has explicitly waived its immunity from state-court proceedings as to such claims. The court then determined that Alabama law would have permitted the

38

Plaintiff's state law claims to proceed against the Board Members and Jennings, but not against Alabama A&M.  In reaching this conclusion, the court expressly analyzed Section 14 of the Alabama Constitution and the exceptions thereto.  The court held that, "[s]ince none of Plaintiff's state-law claims against the individual defendants would be barred by Alabama sovereign immunity rules, they are also not barred by the Eleventh Amendment in this removed action."  (Memorandum Opinion and Order, doc. 19, p. 8).  The court sees no reason to revisit this analysis.  Defendants cite no authority for the proposition that "[a]ny claim for backpay or lost wages is a claim for monetary damages against Alabama A&M."  However, the court agrees that any claim for breach of contract is a claim against Alabama A&M because Alabama A&M was, as alleged by Plaintiff, Plaintiff's employer and, under Alabama law, an agent cannot be held liable for his principal's breach of contract.  *See*, *Harrell v. Reynolds Metals Co.*, 495 So. 2d 1381 (Ala 1986).  Therefore, the Motion to Dismiss is due to be **GRANTED** as to Count Two of the Amended Complaint and Count Two is due to be **DISMISSED WITH PREJUDICE**.  In all other respects, the Motion to Dismiss based on absolute immunity is due to be **DENIED**.

      7.    <u>Dismissal of all of Plaintiff's Claims Against Jennings As Barred by State-Agent Immunity</u>.

Defendants ask this court to dismiss all of Plaintiff's claims against Jennings

(presumably in both his individual and official capacities) because Jennings is entitled to state-agent immunity.   (Motion, doc. 27, par. 7.)   Unfortunately, Defendants' brief does not address this issue.  That is probably why Plaintiff does not address the issue either.  However, this court has previously held that <u>all</u> of the individual defendants are entitled to state-agent immunity to the extent that they are sued in their <u>official</u> capacities for state law violations.  (*See*, Memorandum Opinion and Order, doc. 19, p. 10).  In the face of all parties' silence on the issue at this stage, the court sees no reason to revisit this issue.  Therefore, Defendants' Motion to Dismiss Plaintiff's state-law claims against the defendants (Jennings and the Board Members) in their <u>official</u> capacities as barred by state-agent immunity is due to be **GRANTED**.  Such claims remain **DISMISSED WITH PREJUDICE**.

However, the court finds that the Amended Complaint sufficiently sets out allegations against Jennings in his <u>individual</u> capacity as to fall within the well-recognized exceptions to state-agent immunity.  As stated by the Supreme Court of Alabama in *Ex parte Cranman*, those exceptions are:

> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of

the law.

*Ex parte Cranman*, 792 So.2d 392, *405 -406 (Ala. 2000)[11]

Specifically, Plaintiff has alleged that Jennings, in his individual capacity, violated the Constitution (pre-termination and post-termination procedural due process) and laws (42 USC § 1983) of the United States and the Constitution (pre-termination and post-termination procedural due process) and rules or regulations (policies of Alabama A&M) of the State of Alabama and that Jennings did so willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law.  Plaintiff has set[12] out with sufficient particularity the manner in Jennings committed these alleged violations such that Jennings is on notice of the claims against him and such that Plaintiff's right to relief as to those actions has been "raise[d] above the speculative level."  *Twombly* at ___, 121 S.Ct. at 1965.  Therefore, the Motion to Dismiss, as barred by state-agent immunity, Plaintiff's claims against Jennings in his individual capacity is due to be **DENIED**.

---

[11] "Although *Cranman* was a plurality decision, the restatement of law as it pertains to State-agent immunity set forth in *Cranman* was subsequently adopted by [the Alabama Supreme] Court's decisions in *Ex parte Rizk,* 791 So.2d 911 (Ala.2000), and *Ex parte Butts,* 775 So.2d 173 (Ala.2000)."  *Ex parte Randall*, ___So.2d ___, 2007 WL 1229208, *10 (Ala. 2007).

[12] *See,* Amended Complaint, doc. 26, par. 59, 60, 61, 62, 65, 66, 67, 68, 69, 70, 71, 72, and 73, set out in section II, *supra*.).

8.     Dismissal of all of Plaintiff's claims for monetary damages against Jennings and the Board Members in their official capacities as barred by Section 14 of the Alabama Constitution and the Eleventh Amendment of the United States Constitution.

This is yet another iteration of Defendants' arguments that have been previously ruled on by the court.  The court adopts its previous analysis, as discussed in sections III. C. 6. and 7., *supra*.  The Motion to Dismiss based on Section 14 of the Alabama Constitution[13] and the Eleventh Amendment of the United States Constitution is due to be **DENIED**.

9.     Dismissal of Count Six (wrongful termination) as barred by Section 14 of the Alabama Constitution.

Defendants argue that Counts Two (breach of contract) and Six (wrongful termination) are due to be dismissed as barred by Section 14 of the Alabama Constitution.  This court has already dismissed Count Two.  (*See* section III. C. 6., *supra*.)  Therefore, it will limit its analysis to Count Six, which was not part of the original Complaint.

Because the contract of employment was between Alabama A&M and the Plaintiff, and not between Jennings or any Board Member and the Plaintiff, the claim for wrongful termination is necessarily a claim against Alabama A&M, and therefore

---

[13]   That § 14 of Article I of the Alabama Constitution of 1901 does not create immunity for state employees beyond that which is within the scope of state-agent immunity is discussed at more length in section III. C. 10., *infra*.

against the State of Alabama.  *Carter v. Board of Trustees of University of Alabama in Birmingham*, 431 So.2d 529, 531 (Ala. 1983) ("Similarly, in the present case, Carter entered into a contract of employment not with the individual defendants but with UAB.  Therefore, his claim for wrongful termination of employment and breach of contract is a suit against UAB and barred by § 14.").  Under the court's prior rulings (*see* section III. C. 6., *supra*), the Motion to Dismiss Count Six is due to be **GRANTED**.  Accordingly, Count Six is due to be **DISMISSED WITH PREJUDICE**.

> 10. <u>Dismissal of Count Four Claims for Monetary Damages for Deprivation of Due Process Under the Alabama Constitution of 1901</u>.

Finally, "[t]o the extent Count Four seeks monetary damages for ... deprivation of due process under the Alabama Constitution of 1901," Defendants seek dismissal of such claim on the basis that "Alabama does not recognize [such a] private cause of action."  (Motion, doc. 27, par. 10.)  "[Plaintiff] acknowledges that there is no authority that expressly addresses the issue of allowing a recovery of money damages under the Alabama Constitution of 1901", but argues that: (1) the statement in *Matthews v. Alabama A&M Univ.*, 787 So. 2d 691 (Ala. 2000) relied upon by Defendants is not the holding; and (2) "suits by Alabama citizens against state officials for violating the [Alabama] Constitution of 1901 are analogous to suits by

American citizens against federal officials for violating the United States Constitution, even though there is no authorizing statute like section 1983." (Plaintiff's Opposition Brief, doc. 30, p.30).  Plaintiff provides no analysis, but simply cites the court to *Bivens v. Six Unknown Named Agents of F.B.I.*, 403 U.S. 388 (1971).

The *Matthews* language relied upon by Defendants does not establish the proposition for which they cite it: that "Alabama law does not recognize a direct cause of action for monetary damages under the [Alabama] [C]onstitution."  It appears that, in *Matthews*, the Supreme Court of Alabama held that the circuit court's grant of summary judgment to the Defendants was based on the Plaintiff's <u>failure to cite any authority</u> that such a claim exists, which failure was continued by Plaintiff on appeal (*i.e.*, Plaintiff's procedural default).

> Matthews also alleges that the university employees violated certain rights he claims are guaranteed to him by the Constitution of Alabama of 1901. For these alleged violations, Matthews seeks both compensatory and punitive damages. However, <u>Matthews presented no authority to the trial court, and he has presented no authority to this Court, that recognizes a private cause of action for monetary damages based on violations of the provisions of the Constitution of Alabama of 1901, and we have found none.</u>  Accord *Ross v. Alabama,* 893 F.Supp. 1545, 1555 (M.D.Ala.1995) (finding no authority under Alabama law for bringing an action seeking monetary damages against a state employee for violations of state constitutional law).  <u>Therefore, the trial court properly entered the summary judgment in favor of the university employees on counts 5 (A and B) through 7.</u>  See *Henderson v. Alabama*

*A & M Univ.,* 483 So.2d 392 (Ala.1986) (" '<u>Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor [our] function to perform all the legal research for an appellant.</u>' ").

Accordingly, we affirm the summary judgment in favor of A & M on all counts and in favor of the university employees on the counts alleging state constitutional violations (counts 5 through 7)....

*Matthews v. Alabama A & M Univ.* , 787 So. 2d 691, 698 (emphasis supplied).

No other Alabama appellate decision has interpreted *Matthews* as Defendants ask this court to interpret it.[14]  *See, Ex parte Troy University*, 961 So.2d 105, 109 (Ala. 2006) ("This Court has extended the restriction on suits against the State found in § 14 'to the state's institutions of higher learning' and has held those institutions absolutely immune from suit as <u>agencies</u> of the State.) (emphasis supplied); *Alabama Agr. & Mech. University v. Jones*, 895 So.2d 867, 873 (Ala. 2004) ("'Alabama A & M University is an instrumentality of the State of Alabama and, thus, is absolutely immune from suit under § 14.' ...  Thus, actions against officers, trustees, and employees of state universities in their <u>official</u> capacities are likewise barred by §

---

[14]  The court is aware that the Middle District of Alabama, in a decision entered shortly after *Matthews* (*i.e.*, on September 7, 2000), interpreted *Matthews* <u>almost</u> as Defendants ask this court to do.  *Roberts v. City of Geneva*, 114 F.Supp.2d 1199, 1215 (M.D. Ala. 2000) ("The Supreme Court of Alabama has held that there is no authority that 'recognizes a private right of action for monetary damages based on violations of provisions of the Constitution of Alabama.' *Matthews v. Alabama Agricultural & Mechanical Univ., et al....*"  However, the court points out that the Middle District merely held that *Matthews* stands for the proposition that there is no authority that <u>recognizes</u> such a cause of action, it did <u>not</u> state that *Matthews* stands for the proposition that no such cause of action <u>exists</u>.  Furthermore, *Roberts* is not binding on this court.

14.") (emphasis supplied); *Ex parte Tuscaloosa County*, 796 So.2d 1100, 1106 (Ala. 2000) ("[T]insley was acting as an agent of the state for purposes of enforcing the state's business-license laws.  Therefore, to the extent Cosby sued him in his <u>official</u> capacity, he shares in the state's sovereign immunity under § 14.") (emphasis supplied); *Alabama Dept. of Environmental Management v. Town of Lowndesboro*, 950 So.2d 1180, 1189 (Ala.Civ.App. 2005) ("It is well established that state immunity under § 14 extends to state <u>agencies</u>. (emphasis supplied); *Ex parte Walley*, 950 So.2d 1172, 1180 (Ala. 2006) ("Because a holding in favor of [Plaintiff on her declaratory judgment and injunction claims] would ultimately result in her reinstatement as the director of the Calhoun County DHR, the relief she seeks in the circuit court falls within the well-recognized <u>exceptions</u> to immunity granted by § 14.") (emphasis supplied).

Further, the court finds that the Defendants' proferred reading of *Matthews* is in direct conflict with well-settled law of the State of Alabama regarding claims for monetary damages against agents of the State.  In *Ex parte Cranman*, 792 So.2d 392, decided by the Alabama Supreme Court on June 16, 2000[15], the Supreme Court expressly confronted the inherent conflict between Art. I, § 13, Ala. Const. of 1901, guaranteeing every person a remedy by due process of law for "any injury done ... in

---

[15]   *Matthews* was decided on May 26, 2000.

his lands, goods, person, or reputation" and Art. I, § 14, Ala. Const. of 1901, which declares the State immune from suit.  The *Cranman* court reconciled that conflict by clarifying the law of state-agent immunity.  In *Cranman*, the Alabama Supreme Court emphasized the difference between the <u>State's</u> immunity under Section 14 and the remedy guaranteed under Section 13 as to actions by the State's <u>agents</u> and stated

> The time has come to face the necessity of defining "injury," as that word is used in § 13, in lawsuits against State employees alleging torts committed in the line of duty, in a manner that neither violates § 13 nor prefers § 14 or § 6.01 of the Judicial Article over § 13. We decline to label all discretionary acts by an agent of the State, or all acts by such an agent involving skill or judgment, as "immune" simply because the State has empowered the agent to act. Such an expansive view of the power of the State to act with immunity for its agents would be inconsistent with the rights secured by § 13.

*Ex parte Cranman*, 792 So.2d 392, *405.

Accordingly, the court finds that *Matthews* did not create or recognize an immunity to suit under the Alabama Constitution of 1901 but rather was consistent with the long line of cases delineating Alabama's law of state-agent immunity.  As discussed in section III. C. 7. hereof, "Defendants' Motion to Dismiss Plaintiff's state-law claims against the defendants (Jennings and the Board Members) in their <u>official</u> capacities as barred by state-agent immunity is due to be **GRANTED**. *** [However], the Motion to Dismiss, as barred by state-agent immunity, Plaintiff's claims against Jennings in his <u>individual</u> capacity is due to be **DENIED**."

47

Accordingly, Defendants' Motion to Dismiss Count Four of the Amended Complaint to the extent it "seeks monetary damages for deprivation of due process under the Alabama Constitution of 1901" is **GRANTED** as to defendants (Jennings and the Board Members) in their <u>official</u> capacities is due to be **GRANTED**.  However, the Motion to Dismiss Plaintiff's Count Four claims against Jennings in his <u>individual</u> capacity for monetary damages is due to be **DENIED**.

## IV.  CONCLUSION

For the foregoing reasons, the court **HEREBY ORDERS** as follows:

1.      Defendants' Motion to Dismiss Plaintiff's Amended Complaint is **GRANTED** as to Count Two of the Amended Complaint, and Count Two is hereby **DISMISSED WITH PREJUDICE**.

2.      Defendants' Motion to Dismiss Plaintiff's Amended Complaint is **GRANTED** as to Plaintiff's state-law claims (including claims in Count Four for monetary damages for deprivation of due process under the Alabama Constitution of 1901) against Jennings and the Board Members in their official capacities, and such claims are hereby **DISMISSED WITH PREJUDICE**.

3.      Defendants' Motion to Dismiss Plaintiff's Amended Complaint is **GRANTED** as to Count Six of the Amended Complaint, and Count Six is hereby **DISMISSED WITH PREJUDICE**.

4.      In all other respects, the Motion to Dismiss is **DENIED**.

5.      Defendants shall file their Answer(s) within 11 days of the date of publication of this Memorandum Opinion and Order.

**DONE** this the 7th day of January, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

49